UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARK LANTHIER,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

17-CV-979
DECISION & ORDER

---

On September 29, 2017, the plaintiff, Mark Lanthier, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On October 16, 2018, Lanthier moved for judgment on the pleadings, Docket Item 21; on December 17, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 23; and on January 7, 2019, Lanthier replied, Docket Item 24.

For the reasons stated below, this Court grants Lanthier's motion in part and denies the Commissioner's cross-motion.

## BACKGROUND

**I.    PROCEDURAL HISTORY**

On September 19, 2013, Lanthier applied for Supplemental Security Income benefits. Docket Item 7 at 251. He claimed that he had been disabled since March 18, 2013, due to injuries to his neck, shoulder, and back. *Id.* at 265.

On December 3, 2013, Lanthier received notice that his application was denied because he was not disabled under the Act. *Id.* at 186. He requested a hearing before an administrative law judge ("ALJ"), *id.* at 250, which was held on March 1, 2016, *id.* at 148. The ALJ then issued a decision on March 14, 2016, confirming the finding that Lanthier was not disabled. *Id.* at 155. Lanthier appealed the ALJ's decision, but his appeal was denied, and the decision then became final. *Id.* at 5.

**II.   RELEVANT MEDICAL EVIDENCE**

The following summarizes the medical evidence most relevant to Lanthier's objection. Lanthier was examined by several different providers but three—Kevin Gibbons, M.D., Susan Wegryzn, N.P., and Matthew Carrell, M.D.—are of most significance to the claim of disability here.

**A.    Kevin Gibbons, M.D., and Susan Wegrzyn, N.P.**

Kevin Gibbons, M.D., is a treating neurologist who examined Lanthier on several occasions. On April 3, 2013, he performed an anterior cervical discectomy and fusion on Lantiher's C5-6 and C6-7 discs. Docket Item 7 at 506. Susan Wegryzn, N.P., saw Lanthier for a follow-up examination on May 1, 2013. *Id.* at 514. After that examination, Nurse Practictioner Wegrzyn, in conjunction with Dr. Gibbons, diagnosed cervical

2

spondylosis without myelopathy, lumbar spondylosis without myelopathy, intervertebral cervical disc displacement without myelopathy, and cervicalgia. *Id.* at 515.

Lanthier saw Dr. Gibbons again on July 1, 2013, with a chief complaint of right shoulder pain, and Dr. Gibbons noted that Lanthier's condition had improved. *Id.* at 516. On October 7, 2013, Lanthier again complained of arm discomfort to Nurse Practioner Wegrzyn, but she noted his excellent range of motion and intact upper extremity strength. *Id.* at 518. At both the July 1 and October 7 examinations, Lanthier's treatment providers did not diagnose lumbar spondylosis. *Id.* at 516, 518. But as noted above, they had diagnosed that lower back problem on May 1, 2013. *Id.* at 515.

### B. Matthew Carrell, M.D.

Matthew Carrell, M.D., is Lanthier's primary care physician, and he saw Lanthier many times in recent years. Most relevant to Lanthier's complaint here are Dr. Carrell's exams and treatment in October 2015. On October 2, 2015, for example, Dr. Carrell ordered an MRI of Lanthier's lumbar spine because of "chronic low back pain." Docket Item 7 at 539. Lanthier was also prescribed Gabapentin and Venlafaxine around this time, *see e.g.*, *id.* at 527, in connection with his chronic complaints of low back pain, *id.* at 151. Lanthier apparently had undergone surgery as a result of an injury to his lower back in a motor vehicle accident in 1993, *id.* at 175, and Dr. Carrell's note of October 16, 2015, referred to "[p]ost surgical changes," as well as "lumbar spinal stenosis," in connection with Lanthier's "low back pain." *Id.* at 562. Moreover, the MRI that Dr. Carrell reviewed on the same day evidenced a "congenitally small canal" as well as

"severe L3-L4" and "moderate to severe L2-L3" spinal canal narrowing in his lower back. *Id.*

### III. THE ALJ'S DECISION

In denying Lanthier's application, the ALJ evaluated Lanthier's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one, the ALJ determined that Lanthier did not engage in substantial gainful activity during the period from his alleged disability onset date of March 18, 2013, when he fell and hurt his neck, through his date last insured of March 31, 2013. Docket Item 7 at 150. At step two, the ALJ found that Lanthier's severe impairments were limited to cervical spine disc herniation with cord compression and myelopathy. *Id.* The ALJ also noted Lanthier's "remote history of lumbar spine and right shoulder injuries dating to the mid 1980's, with a history of a lumbar surgery," but he found that these were not severe impairments. *Id.*

At step three, the ALJ found that Lanthier's severe impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 152. At step four, the ALJ determined that Lanthier had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).

5

*Id.* And at step five, the ALJ found that there are significant jobs in the national economy that Lanthier can perform with his RFC. *Id.* at 154.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I. ALLEGATIONS

Lanthier objects to the ALJ's failure to perform a function-by-function analysis before making an RFC finding, failure to find the right shoulder and lumbar spine injuries to be severe impairments, and failure to make a full credibility assessment. Docket Item 21-1 at 1. He also argues that the ALJ erred by not considering Lanthier's non-severe

6

impairments in determining his RFC. *Id.* at 15. Lanthier argues that these legal errors warrant remand for proper consideration of his RFC.[1]

## II. ANALYSIS

When determining a plaintiff's RFC, the ALJ must base the assessment on both severe and non-severe impairments. *See* 20 C.F.R. § 404.1545 ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). So even though the ALJ found that Lanthier's lumbar issues were not "severe" impairments, he nonetheless was required to consider their "limiting effects." *Id.*

But it is not clear from the ALJ's decision that he considered Lanthier's non-severe impairments in assessing his RFC. In fact, it appears that he ignored them since he explicitly found that "the evidence must support the claimant's contention that *his cervical spine impairment* resulted in a disabling condition on or before" March 31, 2013. Docket Item 1 at 153 (emphasis added). What is more, while the ALJ's RFC assessment carefully addresses Lanthier's cervical issues, it says not a word about his non-severe lumbar issues. Because the ALJ was required to base his RFC determination on the total limiting effects of all Lanthier's impairments—both severe and not severe—the matter must be remanded so that the ALJ can do so. *See Parker-Grose v. Astrue*, 462 Fed. Appx. 16, 18 (2d Cir. 2012) (remanding because the ALJ committed legal error by determining the claimant's RFC without accounting for

---

[1] Lanthier's argument that remand is necessary for reconsideration of his non-severe lumbar impairment is the only one with merit. Because the Court remands based on that issue, it does not otherwise address his other objections.

7

substantial evidence of limitations arising from nonsevere impairments) (summary order).

The Commissioner argues that evidence of Lanthier's lumbar impairment outside the relevant period—from the alleged disability onset date of March 18, 2013, to the date last insured of March 31, 2013—is irrelevant and was properly discounted by the ALJ. Docket Item 23-1 at 13. But even evidence from after the date last insured can demonstrate a limitation that existed before the insurance expired. *See, e.g.*, *Hurdis v. Colvin*, 2014 WL 6982298, at *10 (W.D. Wis. Dec. 10, 2014) ("The ALJ's apparent failure to even consider pre-[disability onset date] evidence and post-[insured status date] evidence . . . would arguably mandate remand of this case on that ground alone . . . ."); *Rasmussen v. Astrue*, 2011 WL 2090839, at *2 (D. Utah May 26, 2011) ("diagnoses today could be a sign of limited intelligence and mental illness in the past and should be considered"); *Hartfiel v. Apfel*, 192 F.Supp.2d 41, 44 (W.D.N.Y 2001) (considering treating physician's diagnoses of disability that post-dated insured status).

Here, for example, later medical records indeed shed light on what the ALJ found was a "not severe" impairment of Lanthier's lower back. Dr. Carrell's records, for example, document a history of "*chronic* low back pain" relating to "*postsurgical* changes" and evidence on an MRI of a "*congenitally small* [spinal] canal." Docket Item 7 at 562 (emphasis added). Lanthier's surgery apparently resulted from an automobile accident in 1993. *Id.* at 175. So based on that medical evidence, the ALJ correctly found that in addition to Lanthier's severe cervical impairments, he had lumbar impairments that were "not severe." *Id.* at 150. But the ALJ did not weigh those non-severe impairments in assessing Lanthier's RFC at step four as he was required to do.

In determining Lanthier's RFC, the ALJ was required to consider both severe and nonsevere limitations. The ALJ found that Lanthier had nonsevere lumbar limitations, but he did not consider them as part of his RFC calculus. Because the ALJ did not weigh those impairments in finding Lanthier's RFC, the matter is remanded for further consideration.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 23, is DENIED, and Lanthier's motion for judgment on the pleadings, Docket Item 21, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: April 23, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE